# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREMANE DARNELL CARTHEN,<br><br>Plaintiff,<br><br>v.<br><br>P. SCOTT, et al.,<br><br>Defendants. | Case No. 1:19-cv-00227-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>(ECF NO. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS |

## I.  INTRODUCTION

Plaintiff Tremane Darnell Carthen, appearing *pro se* and *in forma pauperis*, is currently housed in the United States Penitentiary in Atwater, California ("USP Atwater"). On February 4, 2019, Plaintiff commenced this civil rights action, pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), against the following correctional officers at USP Atwater: Lieutenant P. Scott, Officer G. Perez, Officer N. Bradley, and Officer Lodge (collectively "Defendants"). (ECF No. 1). Plaintiff alleges that Defendants engaged in offensive and inappropriate search procedures.

The Court screened the Complaint and found that it failed to state any cognizable claims. (ECF No. 19). The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a claim, and gave Plaintiff leave to file a First Amended

1

Complaint. (Id.). The Court also gave Plaintiff the option of standing on his complaint, "subject to the undersigned issuing findings and recommendations to the assigned district judge consistent with this order." (Id. at 2).

On April 17, 2020, Plaintiff filed a notice, notifying the Court that he wants to stand on his complaint. (ECF No. 22).[1] Accordingly, for the reasons set forth below, the Court recommends that this action be dismissed for failure to state a claim.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## II.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

The Court may also screen a complaint brought *in forma pauperis* under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 663

---

[1] In the notice, Plaintiff alleges that he currently does not have access to the legal materials he needs to prosecute this action or the law library. (ECF No. 22, p. 1). Notably, Plaintiff does not indicate that he would have filed an amended complaint but for the lack of access. The Court notes that if Plaintiff needs additional time to respond to these findings and recommendations because of the lack of access to legal materials or the law library, he may file a motion requesting additional time.

(quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, Hosp. Bldg. Co. v. Trs. of Rex Hospital, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

### III.  SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges that on February 5, 2018, Officer N. Bradley asked Plaintiff to step out of his cell and informed Plaintiff that Bradley was going to conduct a pat search. Plaintiff complied and placed his hands on the wall. Officer Bradley stuck his hands down the front of Plaintiff's pants and rubbed his hand across Plaintiff's penis. Plaintiff immediately pulled Bradley's hands out of Plaintiff's pants and told Bradley never to stick his hands down Plaintiff's pants again.

Plaintiff also alleges that on July 14, 2018, he was stopped by Officer G. Perez for a pat search when Plaintiff came out of the dining hall after lunch. Perez reached between Plaintiff's legs and touched Plaintiff's testicles. Plaintiff told Perez to never touch Plaintiff in that area again. Perez requested that Plaintiff submit a visual strip search. Plaintiff was escorted to the holding tank by Perez and Lieutenant P. Scott. After Plaintiff refused to strip, Scott grabbed Plaintiff's shirt and proceeded to forcefully take off Plaintiff's clothing without consent.

Plaintiff further alleges that on September 19, 2018, Plaintiff was placed in the Special Housing Unit ("SHU") under investigation for the Prison Rape Elimination Act ("PREA") complaint filed against Officer Lodge. Lodge pulled Plaintiff over on the sidewalk in front of Building #3B and asked to search Plaintiff. Plaintiff complied and raised his arms above his head. Lodge reached down inside the front of Plaintiff's pants and rubbed his hand across Plaintiff's penis in search of something. Plaintiff removed Lodge's hands from Plaintiff's pants and told Lodge never to place his hands down Plaintiff's pants. Lodge then escorted Plaintiff to

the holding tank and asked Plaintiff to do a visual search. Plaintiff complied after a heated dispute and informed Lodge that Plaintiff will write a grievance for sexual harassment.

Plaintiff alleges that there have been other similar incidents and that he reported to Lieutenant Martinez about other officers targeting Plaintiff with offensive and inappropriate search procedures.

## IV.   EVALUATION OF PLAINTIFF'S COMPLAINT

A Bivens action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. Hartman v. Moore, 547 U.S. 250 (2006). The basis of a Bivens action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. Baiser v. Department of Justice, Office of U.S. Trustee, 327 F.3d 903, 909 (9th Cir. 2003). "To state a claim for relief under *Bivens*, a plaintiff must allege that a federal officer deprived him of his constitutional rights." Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing Schearz v. United States, 234 F.3d 428, 432 (9th Cir. 2000). A Bivens claim is only available against officers in their individual capacities. Morgan v. U.S., 323 F.3d 776, 780 n.3 (9th Cir. 2003); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996). "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under *Bivens*." O'Neal v. Eu, 866 F.2d 314, 314 (9th Cir. 1988).

Plaintiff must allege facts linking each named defendant to the violation of his rights. Iqbal, 556 U.S. at 676; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The factual allegations must be sufficient to state a plausible claim for relief, and the mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678–79.

**A. Eighth Amendment**

1. Sexual Harassment or Abuse

Sexual harassment or abuse of an inmate by a prison official is a violation of the Eighth Amendment. Wood v. Beauclair, 692 F.3d 1041, 1046, 1051 (9th Cir. 2012) (citing Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000)). In evaluating such a claim, "courts consider

whether 'the official act[ed] with a sufficiently culpable state of mind'"—the subjective component—"and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation"—the objective component. Wood, 692 F.3d at 1046 (alteration in original) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). As "sexual assault serves no valid penological purpose . . . where an inmate can prove that a prison guard committed a sexual assault, we presume the guard acted maliciously and sadistically for the very purpose of causing harm, and the subjective component of the Eighth Amendment claim is satisfied." Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020) (citing Wood, 692 F.3d at 1050; Schwenk, 204 F.3d at 1196 n.6). "Any sexual assault is objectively 'repugnant to the conscience of mankind' and therefore not *de minimis* for Eighth Amendment purposes." Bearchild, 947 F.3d at 1144 (quoting Hudson, 503 U.S. at 10).

In sum,

> a prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner.

Bearchild, 947 F.3d at 1144. "In a case . . . where the allegation is that a guard's conduct began as an invasive procedure that served a legitimate penological purpose, the prisoner must show that the guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." Id. at 1145.

The Complaint fails to state Eighth Amendment claims against Defendants. Taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, the allegations do not demonstrate that the conduct at issue exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the pat searches. See Bearchild, 947 F.3d at 1144–45 ("[T]here are occasions when legitimate penological objectives within a prison setting require invasive searches."); Grummet v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985) ("[R]outine pat-down searches, which include the groin area, and which are otherwise justified by security needs, do not violate" the Constitution). The Complaint also does not allege facts

demonstrating that Defendants touched Plaintiff in a sexual manner for Defendants' own sexual gratification or for the purpose of humiliating, degrading, or demeaning Plaintiff. For example, there are no allegations that Defendants made sexual, humiliating, degrading, or demeaning comments during the challenged searches. Each of the contacts appears to be associated with a request to search Plaintiff.

2. Excessive Force

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer v. Brennan, 511 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992).

> [I]n order to assess whether "the handling of [an inmate] was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing him harm," we will "examine the need for the application of the measure or sanction complained of, the relationship between the need and the measure or sanction used, the extent of any injury inflicted, and the extent of the surrounding threat to the safety of staff and inmates." *LeMaire v. Maass*, 12 F.3d 1444, 1454 (9th Cir. 1993).

Hoard v. Hartman, 904 F.3d 780, 789 (9th Cir. 2018) (first alteration added).

The Complaint fails to state an excessive force claim against Defendant Scott. Even taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, the allegations do not demonstrate that the conduct at issue (Scott grabbing Plaintiff's shirt and forcefully taking off Plaintiff's clothing without consent) was to maliciously and sadistically cause harm. Rather, the allegations demonstrate that the force was applied to compel compliance with a strip search after Plaintiff refused to strip. The allegations are insufficient to establish that the force used by Defendant Scott was greater than necessary to accomplish the strip search, and there are no allegations that any injury was inflicted on Plaintiff or that the strip search was unrelated to any legitimate penological interest.

\\\

**B. Fourth Amendment**

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures," U.S. Const. amend. IV, and the Ninth Circuit has "recognized that the Fourth Amendment does apply to the invasion of bodily privacy in prisons." Bull v. City & Cty. Of San Francisco, 595 F.3d 964, 974–75 (9th Cir. 2010) (*en banc*) (citing Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988)). The Supreme Court has recognized that the "test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application" and in the context of prisons, it requires "[b]alancing the significant and legitimate security interests of the institution against the privacy interests of the inmates." Bell v. Wolfish, 441 U.S. 520, 559, 560 (1979). In evaluating the reasonableness of a particular search, the Supreme Court instructs that "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. Id. at 559.

In Bell v. Wolfish, the Supreme Court upheld a federal facility's policy of requiring visual body cavity searches of inmates after every contact visit with a person from outside the institution. 441 U.S. at 560. Although the visual body cavity searches were upheld in Bell, the Supreme Court "obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Michenfelder, 860 F.2d at 332.

Plaintiff's allegations are insufficient to state an unreasonable search claim against Defendants Scott, Perez, and Lodge regarding the strip searches. The allegations do not challenge the scope of the strip searches (as opposed to the pat searches), the justification for initiating them, or the places in which they were conducted. Plaintiff does appear to challenge the manner in which Defendant Scott conducted the strip search by forcibly removing Plaintiff's clothes without Plaintiff's consent. However, the Complaint alleges that Plaintiff had refused to comply with the strip search, and there are not sufficient factual allegations to demonstrate the manner in which Defendant Scott conducted the search was unnecessary or exaggerated. See Michenfelder, 860 F.2d at 333 (The prisoner "bears the burden of showing [prison] officials

7

intentionally used exaggerated or excessive means to enforce security."). Thus, even taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, the allegations do not demonstrate that the strip searches were excessive, vindictive, harassing, or unrelated to any legitimate penological interest.

### C. First Amendment Retaliation

The First Amendment protects a prisoner's right to seek redress of grievances from prison authorities and a prisoner's right of meaningful access to the courts. Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015). In the context of prisons, a First Amendment retaliation claim is comprised of five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

Plaintiff's allegations are insufficient to state a First Amendment retaliation claim against Defendant Lodge. Even taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, the Complaint does not allege facts sufficient to show a causal link between Plaintiff's protected activity (i.e., PREA complaint filed against Defendant Lodge) and Defendant Lodge's improper search. For example, the Complaint does not allege that Lodge was aware of the PREA complaint that Plaintiff filed against Lodge at the time of the search. The Complaint also does not clearly allege facts demonstrating that the adverse action chilled Petitioner's exercise of his First Amendment rights and that the action did not reasonably advance a legitimate correctional goal.

### V. CONCLUSION AND RECOMMENDATIONS

The Court has screened Plaintiff's Complaint and finds that it fails to state any cognizable claims.  The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a claim, and gave Plaintiff leave to file a First Amended Complaint, but Plaintiff chose to stand on his complaint rather than filing an amended complaint.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action be dismissed for failure to state a claim; and
2. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **April 20, 2020**           /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE