UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREMANE DARNELL CARTHEN,<br><br>Plaintiff,<br><br>v.<br><br>P. SCOTT, et al.,<br><br>Defendants. | Case No. 1:19-cv-00227-ADA-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED<br><br>(ECF No. 54)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

I.  **INTRODUCTION**

Tremane Carthen ("Plaintiff") is a federal prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action.  This case is proceeding on Plaintiff's Eighth Amendment sexual assault/harassment claims against defendants Scott, Perez, Bradley, and Lodge and on Plaintiff's Fourth Amendment unreasonable search claims against defendants Scott, Perez, Bradley, and Lodge. (ECF No. 39).[1]  Plaintiff's claims are proceeding based on allegations that Defendants engaged in offensive and inappropriate search procedures.  (ECF No. 38).

On May 18, 2022, Defendants filed a motion to dismiss.  (ECF No. 54).  On June 13, 2022, Plaintiff filed an opposition to the motion.  (ECF No. 62).  On July 5, 2022, Defendants filed their reply.  (ECF No. 66).  On July 12, 2022, the Court allowed Plaintiff to file a sur-

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

reply to address Defendants' arguments related to Egbert v. Boule, 142 S. Ct. 1793 (2022). (ECF No. 68).  On July 18, 2022, Plaintiff filed a second opposition.  (ECF No. 70).  On July 29, 2022, Defendants filed an objection to Plaintiff's second opposition.  (ECF No. 75).  On August 15, 2022, Plaintiff filed the sur-reply authorized by the Court.  (ECF No. 79).  Plaintiff did not respond to Defendants' objection to his second opposition.

Defendants' motion to dismiss is now before the Court.  For the reasons that follow, and in light of recent case authority from the United States Supreme Court, the Court will recommend that Defendants' motion to dismiss be granted because Plaintiff's claims arise in a new context and there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing Bivens damages actions to proceed.[2]

As to Defendants' objection to Plaintiff's second opposition, the Court will recommend that it be overruled as moot.  The Court has reviewed the second opposition, and it does not change the result.

## II.   CLAIMS AT ISSUE

### a. Summary of Plaintiff's Complaint

Plaintiff alleges as follows in his First Amended Complaint:

On February 5, 2018, defendant Bradley asked Plaintiff to step out of his cell at United States Penitentiary, Atwater, and informed Plaintiff that he was going to conduct a pat search. Plaintiff complied and placed his hands on the wall.  Defendant Bradley stuck his hands down the front of Plaintiff's pants and rubbed his fingers across Plaintiff's penis in a slow sensual manner, with his fingertips curled around the side of Plaintiff's penis.  While defendant Bradley did this, he whispered into Plaintiff's ear something to the effect that he "imagined [Plaintiff] would feel different."  Plaintiff immediately pulled defendant Bradley's hands out of his pants and told defendant Bradley never to stick his hands down his pants again.  Plaintiff felt humiliated and degraded.

---

[2] Given this, the Court will not address Defendants' other arguments as to why this case should be dismissed.

2

On July 14, 2018, Plaintiff was stopped by defendant Perez for a pat search when Plaintiff exited the dining hall after lunch. Defendant Perez dragged his hands on the inside of Plaintiff's thighs in a tender fashion until he felt Plaintiff's testicles. While standing behind Plaintiff and feeling his testicles, defendant Perez cupped his hand around the testicles, squeezed them enough to startle Plaintiff, and told Plaintiff he "should get some alone time and take a load off." Plaintiff told defendant Perez to never touch Plaintiff in that area again. Defendant Perez requested that Plaintiff submit to a visual strip search, while smiling and licking his lips at Plaintiff as he turned to escort Plaintiff to a holding tank with defendant Scott.

After Plaintiff refused to strip, defendant Scott grabbed Plaintiff's shirt and proceeded to forcefully remove Plaintiff's clothing. During the encounter Plaintiff tried to tell defendant Scott about defendant Perez's comments and groping of his testicles. Defendant Scott ignored Plaintiff and stated things to the effect of "I don't care or believe you," and "I trust my Officer."

On September 19, 2018, Plaintiff was placed in the Special Housing Unit, under investigation for a Prison Rape Elimination Act complaint he filed against defendant Lodge. Defendant Lodge pulled Plaintiff over on the sidewalk in front of Building #3B and asked to search Plaintiff. Plaintiff complied and raised his arms above his head. Defendant Lodge reached inside the front of Plaintiff's pants, squeezed his penis with his whole hand, and tugged on it softly without releasing it from his grasp. While doing this, he stated something to the effect of "it's a myth about you all being hung lower than whites, you know that don't you?" Plaintiff immediately removed defendant Lodge's hands from his pants and told defendant Lodge to never place his hands down Plaintiff's pants again. Defendant Lodge then escorted Plaintiff to a holding tank and asked to do a visual strip search. Plaintiff complied after a heated exchange of words, and while Plaintiff was standing naked, defendant Lodge stated something along the lines of "I've even heard women say you all don't even get hard and stay mushy like a sponge." Plaintiff felt degraded and humiliated.

\\\

b. Screening Order

The Court screened Plaintiff's complaint and allowed this action to proceed on Plaintiff's Eighth Amendment sexual assault/harassment claims against defendants Scott, Perez, Bradley, and Lodge and on Plaintiff's Fourth Amendment unreasonable search claims against defendants Scott, Perez, Bradley, and Lodge. (ECF No. 39). Plaintiff did not bring any other claims. (See ECF Nos. 38 & 39).

### III.    MOTION TO DISMISS

a. Defendants' Motion

On May 18, 2022, Defendants filed a motion to dismiss on three grounds: 1) "[U]nder the two-step analysis set forth in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), this Court cannot create an individual damages remedy in this new context;" 2) The complaint fails to state a claim; and 3) Defendants are entitled to qualified immunity. (ECF No. 54, p. 1).

As to Defendants' first argument, that this Court cannot create an individual damages remedy in this new context, Defendants argue that, "[t]o determine whether a *Bivens* action can proceed, the Court must follow the two-step inquiry set out in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)." (ECF No. 54-1, p. 3). "First, the Court must ask whether the claim arises in a context that is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court. If meaningful differences exist, then the Court must ask whether there are special factors counselling hesitation in the absence of affirmative action by Congress." (Id. at 3-4) (citations and internal quotation marks omitted).

As to the first step, Defendants argue that this case arises in a new context because Plaintiff's claims differ from the *Bivens* claims that have been previously recognized by the Supreme Court. (Id. at 4-6).

As to the second step, Defendants argue that there are special factors counseling hesitation: 1) "Congress has legislated actively with respect to sexual assault against prisoners specifically and prisoner litigation generally, but at no point has Congress created an individual cause of action against prison guards;" 2) Alternative remedies are available, including the Prison Rape Elimination Act and the Bureau of Prisons' administrative remedy program; 3)

4

Creating a new cause of action in this context would "constitute unwarranted judicial interference in daily prison administration and security management;" and 4) Creating a new cause of action in the context of pat-down searches would have a negative effect on government operations.  (Id. at 6-10).

      b. Plaintiff's Oppositions

          i. *Plaintiff's First Opposition*

Plaintiff filed his first opposition on June 13, 2022.  (ECF No. 62).

Plaintiff argues that his complaint does not fail to state a claim (id. at 7-9 & 19-20) and appears to argue that Defendants are not entitled to qualified immunity (id. at 9-10 & 21).

As to Defendants' arguments regarding Abbasi, Plaintiff argues that the Supreme Court has held that federal courts may award damages against federal employees for violations of the Constitution, even in the absence of a statute conferring such a right.  (Id. at 4).  After the Supreme Court first recognized Bivens actions, "courts have allowed Bivens actions generally for prisoners' constitutional claims against federal prison personnel."  (Id.).  Plaintiff also appears to argue that there are no special factors counseling hesitation before recognizing a Bivens remedy.  (Id. at 5-6).

          ii. *Plaintiff's Second Opposition*

On July 18, 2022, Plaintiff filed his second opposition.  (ECF No. 70).

Plaintiff once again argues that his complaint does not fail to state a claim (id. at 8-11) and that Defendants are not entitled to qualified immunity (id. at 11-12).

As to Defendants' arguments regarding Abbasi, Plaintiff once again argues that the Supreme Court has held that federal courts may award damages against federal employees for violations of the Constitution, even in the absence of a statute conferring such a right.  (Id. at 4-5).  Plaintiff also argues that his claims do not arise in a new context.  (Id. at 6-7).  Plaintiff points to Reid v. United States (ECF No. 70, p. 6), which held that, "[i]n *Carlson*, the Supreme Court recognized an Eighth Amendment *Bivens* claim based on prisoner mistreatment.  A claim for damages based on individualized mistreatment by rank-and-file federal officers is exactly what *Bivens* was meant to address.  Continuing to recognize Eighth Amendment *Bivens* claims

5

post-Abbasi will not require courts to plow new ground because there is extensive case law establishing conditions of confinement claims and the standard for circumstances that constitute cruel and unusual punishment." 825 F. App'x 442, 444-45 (9th Cir. 2020) (citations omitted). Plaintiff also argues that Bivens itself concerned a Fourth Amendment claim, and that Davis v. Passman, 442 U.S. 228 (1979), involved a Fifth Amendment sexual harassment claim that is similar to Plaintiff's claims. (ECF No. 70, pgs. 6-7).

As to the special factors analysis, Plaintiff concedes that Congress legislated actively with respect to sexual assault against prisoners, and that he filed several PREA complaints against the officers involved. (Id. at 7). However, Plaintiff argues that "at no point has Congress created an individual cause of action against prison guards, which is something that has to and needs to change for the safety and protection of prisoner's human rights." (Id.). Plaintiff argues that "[t]he Court should take the step that Congress has declined to take, due to the fact that Congress has passed legislation to prevent sexual abuse of prisoners, but declined to include an individual cause of action against prison guards in that legislation…." (Id.). Plaintiff argues that the fact that Congress declined to include an individual cause of action in PREA does not counsel hesitation in creating a judicial remedy. (Id. at 8). Plaintiff also argues that the fact that Defendants are prison officials is not a special factor that counsels hesitation. (Id.).

c. Defendants' Reply

On July 5, 2022, Defendants filed their reply to Plaintiff's first opposition. (ECF No. 66). In their reply, Defendants argue, among other things, the decision in Egbert v. Boule, 142 S. Ct. 1793 (2022), which was issued after Defendants filed their motion to dismiss, made clear that the Court should not create new Bivens causes of action in this case. (ECF No. 66, pgs. 1-4).

d. Plaintiff's Sur-Reply

The Court gave Plaintiff permission "to file a sur-reply that addresses only the arguments in Defendants' reply related to Egbert v. Boule…." (ECF No. 68, p. 2). Plaintiff filed his sur-reply on August 15, 2022. (ECF No. 79). Plaintiff argues that Egbert does not

6

apply because his claims do not arise in a new context. (Id. at 1-2). Additionally, Egbert involved issues with the border, and was a national security case. (Id. at 2). Additionally, the plaintiff in Egbert had several potential remedies. (Id.). Plaintiff also cites to numerous cases decided before Egbert in support of his argument that that his claims should be allowed to proceed. (Id. at 3-8).

Plaintiff also includes arguments that he made in his second opposition, as well as arguments that are not related to the arguments concerning Egbert v. Boule in Defendants' reply.

### IV.     LEGAL STANDARDS FOR A MOTION TO DISMISS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. See Iqbal, 556 U.S. at 679. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236 (1974).

\\\

## V. DISCUSSION

In the recent case of Egbert v. Boule, 142 S. Ct. 1793, the United States Supreme Court explained the following steps for evaluating a constitutional claim for damages against a federal official: "To inform a court's analysis of a proposed *Bivens* claim, [The Supreme Court's] cases have framed the inquiry as proceeding in two steps. First, we ask whether the case presents a new *Bivens* context—i.e., is it meaningful[ly] different from the three cases in which the [Supreme] Court has implied a damages action. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a Bivens remedy." Egbert, 142 S. Ct. at 1803 (alteration in original) (citations and internal quotation marks omitted). These steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." (Id.) (internal quotation marks omitted).

The issue before the Court is thus whether Plaintiff's claims involve a new context, and if so, whether there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. For the reasons that follow, the Court finds that Plaintiff's claims involve a new context and that there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing damages actions to proceed. Accordingly, the Court will recommend that Defendants' motion to dismiss be granted.

    a. New Context

        i. *Legal Standards*

A case presents a new context if it "is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court." Abbasi, 137 S. Ct. at 1859. The Supreme Court has declined "to create an exhaustive list of differences that are meaningful enough to make a given context a new one," id. at 1859-60, but provided the following instructive examples:

8

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Abbasi, 137 S. Ct. at 1860.

As to the three cases that the Supreme Court has allowed to proceed under Bivens, the Supreme Court has summarized those three cases:

> In *Bivens v. Six Unknown Fed. Narcotics Agents*, the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim. The Court subsequently extended *Bivens* to cover two additional constitutional claims: in *Davis v. Passman*, a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in *Carlson v. Green*, a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment.

Hernandez v. Mesa, 140 S. Ct. 735, 741 (2020) (citations shortened).

        ii.   *Analysis*

This case is proceeding on Plaintiff's Eighth Amendment sexual assault/harassment claims against prison officials and on Plaintiff's Fourth Amendment unreasonable search claims against prison officials. Plaintiff's claims are proceeding based on allegations that Defendants engaged in offensive and inappropriate search procedures.

These claims have some similarity to the claims the Supreme Court has allowed to proceed under Bivens. Bivens itself involved a Fourth Amendment unreasonable search claim, and Carlson involved a prisoner's Eighth Amendment claim. However, there are differences, and because of these differences, Plaintiff's claims arise in a new context.

Bivens involved a Fourth Amendment claim against agents of the Federal Bureau of Narcotics. Bivens, 403 U.S. at 389. The claims involved a search of Plaintiff's apartment, unlawful arrest, and excessive force. Here, Plaintiff is suing prison officials for a search that occurred in prison. This difference is important because, while prisoners retain Fourth Amendment rights, their Fourth Amendment rights are more limited. See, e.g., Bell v. Wolfish,

9

441 U.S. 520, 559 (noting that "[a] detention facility is a unique place fraught with serious security dangers," and after "[b]alancing the significant and legitimate security interests of the institution against the privacy interests of the inmates," finding that, at least in certain situations, visual body-cavity inspections can be conducted on less than probable cause); Michenfelder v. Sumner, 860 F.2d 328, 333–34 (9th Cir. 1988) ("We recognize that incarcerated prisoners retain a *limited* right to bodily privacy…. Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir.1985); *see also* Cumbey v. Meachum, 684 F.2d 712, 714 (10th Cir.1982) ('Although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether.').") (emphasis added) (footnote omitted).

As another example as to why the differences matter, in Egbert, the plaintiff brought a Fourth Amendment excessive force claim against Egbert, a U.S. Border Patrol Agent. 142 S. Ct. at 1800. Plaintiff alleged that Egbert threw him against a vehicle and then threw him to the ground. Even though the case involved a Fourth Amendment excessive force claim just like in Bivens, the Supreme Court found that no Bivens remedy was available. Egbert, 142 S. Ct. at 1805 ("While *Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury, these superficial similarities are not enough to support the judicial creation of a cause of action…. [T]he Judiciary is comparatively ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate"). See also Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020) ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

Thus, even though Plaintiff's Fourth Amendment claims have some parallels to a claim in Bivens, they arise in a new context. Ziglar, 137 S. Ct. at 1865 ("The differences between this claim and the one in *Carlson* are perhaps small, at least in practical terms. Given [the Supreme] Court's expressed caution about extending the *Bivens* remedy, however, the new-context inquiry is easily satisfied.").

Plaintiff's Eighth Amendment claims involve a new context for similar reasons. While both Carlson and this case involve the Eighth Amendment and federal prison officials, Carlson

involved a claim for inadequate medical care.  Here, Plaintiff's Eighth Amendment claim is based on conduct that occurred during searches.  As Plaintiff's Eighth Amendment sexual harassment/sexual assault claims involve entirely different conduct than the conduct in Carlson, Plaintiff's Eighth Amendment claims also arise in a new context.  See also Smith v. Kendryna, 2021 WL 1425273, at *2 (E.D. Cal. Apr. 15, 2021), report and recommendation adopted, 2021 WL 2227268 (E.D. Cal. June 2, 2021) (holding that a prisoner's sexual harassment claim presented a new context); Schwarz v. Meinberg, 761 F. App'x 732, 734 (9th Cir. 2019) ("Schwarz's Eighth Amendment claim regarding unsanitary cell conditions presents a new *Bivens* context because Schwarz does not allege a failure to treat a serious medical condition, which was the issue in *Carlson*, 446 U.S. at 16, 100 S.Ct. 1468."); Ziglar, 137 S. Ct. at 1865 ("Given [the Supreme] Court's expressed caution about extending the *Bivens* remedy … the new-context inquiry is easily satisfied.").

      Plaintiff's arguments to the contrary are not persuasive.  Plaintiff argues that his sexual harassment/sexual assault claims do not arise in a new context because Davis involved a sexual harassment claim.  However, Plaintiff is incorrect.  Davis involved a suit for gender discrimination, not sexual harassment.  Davis, 442 U.S. at 231 ("Davis brought suit in the United States District Court for the Western District of Louisiana, alleging that Passman's conduct discriminated against her on the basis of sex in violation of the United States Constitution and the Fifth Amendment thereto.") (citation and internal quotation marks omitted).  Thus, Plaintiff's claims are not the same as the claim the Supreme Court recognized in Davis.

      As for Plaintiff's argument based on Reid v. United States, Plaintiff is correct that in Reid the Ninth Circuit held that "[a] claim for damages based on individualized mistreatment by rank-and-file federal officers is exactly what Bivens was meant to address.  Continuing to recognize Eighth Amendment *Bivens* claims post-*Abbasi* will not require courts to plow new ground because there is extensive case law establishing conditions of confinement claims and the standard for circumstances that constitute cruel and unusual punishment."  825 F. App'x at 444-45 (citation omitted).  However, Reid was not published and is thus not binding on this

Court. Additionally, Reid was decided before Egbert, and the Supreme Court in Egbert found that a Bivens remedy was not available, even though Egbert involved individualized mistreatment by a rank-and-file federal officer. Finally, the Court in Egbert found that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law," and that "in most every case" the Court should defer to Congress and find that "no *Bivens* action may lie." Egbert, 142 S. Ct. at 1803, 1809. Accordingly, the Court does not find Reid persuasive.

Therefore, based on the foregoing, the Court finds that Plaintiff's claims arise in a new context.

      b.  Special Factors Analysis

          i.  *Legal Standards*

Once the Court finds that claims arise in a new context, the Court must apply a "special factors" analysis to determine whether "special factors counsel hesitation" in expanding Bivens to the action. Abbasi, 137 S. Ct. at 1857, 1875. In this analysis, the Court looks to "whether there is any rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." Egbert, 142 S. Ct. at 1805 (citation and internal quotation marks omitted).[3] "[I]n most every case" the Court should defer to Congress and find that "no *Bivens* action may lie." Id. at 1803.

"If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." Id. at 1804 (citations and internal quotation marks omitted).

          ii.  *Analysis*

The Court finds that there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing damages actions to proceed, and Plaintiff's arguments to the contrary are not persuasive.

---

[3] The Court notes that Egbert changed the relevant inquiry. Mejia v. Miller, 53 F.4th 501, 505 (9th Cir. 2022) ("The question is no longer whether the Judiciary is well suited, but whether Congress is better suited.").

Most of Plaintiff's claims rely on allegations that he was sexually harassed/sexually assaulted during searches. Congress has legislated actively in this area[4] and created an alternative remedial structure by enacting the Prison Rape Elimination Act ("PREA").

The definition of sexual abuse in PREA includes "sexual fondling of a person, forcibly or against the person's will." 34 U.S.C. § 30309(9)(A). Sexual fondling is defined as "the touching of the private body parts of another person (including the genitalia, anus, groin, breast, inner thigh, or buttocks) for the purpose of sexual gratification." 34 U.S.C.A. § 30309(11). Additionally, PREA regulations define sexual abuse to include "[a]ny other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire." 28 C.F.R. § 115.6.

Additionally, PREA was enacted, at least in part, to address concerns regarding violations of the Eighth Amendment. 34 U.S.C. § 30301(13). Further, PREA includes a remedial structure. This includes providing inmates access to confidential support services, 28 C.F.R. § 115.53, specifications for investigating allegations of sexual abuse and reporting the findings to the reporting inmate, C.F.R. § 115.71 & 115.73, and disciplinary sanctions for staff for violating sexual abuse or sexual harassment policies, C.F.R. § 115.76.

Thus, PREA provides an alternative remedial structure as to most of Plaintiff's claims.

Moreover, as to all of Plaintiff's claims, the Bureau of Prisons' administrative remedy program provides an alternative remedial structure. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74, (2001) ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including … grievances filed through the BOP's Administrative Remedy Program (ARP). See 28 CFR § 542.10 (2001) (explaining ARP as providing 'a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement')."); Egbert, 142 S. Ct. at 1806 ("In *Malesko*, we explained that *Bivens* relief was unavailable because federal prisoners could, among other options, file grievances

---

[4] The parties agree that Congress has legislated actively in this area. (ECF No. 54-1, p. 6; ECF No. 70, p. 7).

through an Administrative Remedy Program.") (internal quotation marks omitted); Hoffman v. Preston, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) ("Hoffman's complaint alleges that a prison correctional officer intentionally created the risk that another prisoner would assault Hoffman by publicly labeling him as a snitch and offering prisoners rewards. The Supreme Court's decision in *Egbert v. Boule* precludes recognizing a *Bivens* remedy for these allegations. Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' *Egbert*, 142 S. Ct. at 1803, why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (alteration in original).

While neither PREA nor the Bureau of Prisons' administrative remedy program provide Plaintiff with complete relief,[5] the question before the Court is not whether existing remedies provide complete relief. Egbert, 142 S. Ct. 1793, 1804. "Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." Id. (citations and internal quotation marks omitted). And, as discussed above, the existence of these alternative remedial structures is a rational reason why Congress has not authorized a damages remedy for Plaintiff's claims.

Most of Plaintiff's arguments are addressed above, and the remainder of his arguments are not persuasive. While Plaintiff is correct that Egbert involved a border patrol agent, as discussed above, Egbert also laid out standards to apply in determining whether the Court should recognize new Bivens actions, and under those standards, Plaintiff's claims should not be allowed to proceed. Additionally, the fact that Boule had several potential remedies available does not change the analysis. As discussed above, the availability of an administrative remedy program is a special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed on Plaintiff's claims, even if that remedy cannot provide complete relief.

---

[5] PREA does not create a private right of action. Hardney v. Moncus, 2016 WL 7474908, at *3 (E.D. Cal. Dec. 28, 2016); Khouanmany v. United States Marshals, 2019 WL 1400103, at *3 (E.D. Cal. Mar. 28, 2019), report and recommendation adopted, 2019 WL 3066402 (E.D. Cal. July 12, 2019).

Finally, the older cases that Plaintiff cites in his sur-reply are not persuasive.  Egbert provided more recent direction to courts to look to "whether there is any rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed," Egbert, 142 S. Ct. at 1805 (citation and internal quotation marks omitted), and here there is at least one rational reason to think that Congress is better suited to weigh the costs and benefits of allowing damages actions to proceed.[6]

Accordingly, there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing damages actions to proceed.

Applying the Supreme Court's recent directions, and as Plaintiff's claims arise in a new context and there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing Bivens damages actions to proceed, the Court will recommend that Defendants' motion to dismiss be granted and that this case be dismissed.

      c. Leave to Amend

The Court will not recommend that further leave to amend be granted.  Plaintiff has already been granted leave to amend once.  (ECF No. 39).  Moreover, there is no indication that any amendment could cure the legal issue identified in this order, and so granting Plaintiff leave to amend would be futile.[7]

\\\

\\\

---

[6] The Court notes that Plaintiff alleges that he filed several PREA complaints against Defendants (ECF No. 62, p. 5), as well as PREA complaints regarding other incidents (id. at 6).  Plaintiff further alleges that, on one occasion, the investigation was not properly conducted.  (Id.).  To the extent Plaintiff is arguing that the failure to properly conduct one investigation means that the Court should allow his Eighth Amendment claims to proceed under *Bivens*, Plaintiff's argument is not persuasive.  "[A] court should not inquire … whether *Bivens* relief is appropriate in light of the balance of circumstances in the particular case….  Rather, under the proper approach, a court must ask [m]ore broadly if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate."  Egbert, 142 S. Ct. at 1805 (alteration in original) (citations and internal quotation marks omitted).

[7] The Court notes that, in his first opposition, Plaintiff states that he wants to amend his complaint, seemingly to add claims against new defendants. (ECF No. 62, p. 21).  Plaintiff subsequently filed a motion to supplement his complaint (ECF Nos. 63 & 64), and his motion was denied (ECF No. 81).

## VI. RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' objection to Plaintiff's second opposition (ECF No. 75) be overruled as moot.
2. Defendants' motion to dismiss (ECF No. 54) be GRANTED because Plaintiff's claims arise in a new context and there is at least one special factor indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing Bivens damages actions to proceed; and
3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **January 20, 2023**                     /s/ Erica P. Grosjean
                                                UNITED STATES MAGISTRATE JUDGE